Voto particular disidente emitido por la
Juez Asociada Señora Rodríguez Rodríguez.
En el pasado nos hemos expresado en innumerables ocasiones sobre el uso y abuso del recurso de certificación intrajurisdiccional por una mayoría de este Tribunal. Véase, por ejemplo, Asoc. Fotoperiodistas v. Rivera Schatz, 180 DPR 920 (2011). Este recurso, por su naturaleza, supone ser utilizado excepcionalmente, pues altera el trámite ordinario de nuestros tribunales. Rivera v. J.C.A., 164 DPR 1 (2005).(1) Pese a nuestra oposición, utilizar este recurso ha sido la norma para el bloque mayoritario cuando se trata del resguardo de ciertos intereses. El caso de hoy es el mejor ejemplo.
En el recurso de certificación ante nuestra consideración se impugna la Ley Núm. 109 de 28 de julio de 2014 porque ésta requiere la colegiación compulsoria y el pago de la colegiación como condición para ejercer la práctica de la abogacía y la notaría. Sobre este asunto, la ley establece lo siguiente:
Los abogados que a la fecha en que entre en vigor esta Ley no estén colegiados deberán cumplir con dicho requisito en un término no mayor de noventa (90) días a contarse desde el lero de enero del próximo año natural posterior a la entrada en *455 vigor de esta Ley. (Énfasis suplido.) Art. 11 de la Ley Núm. 109 de 28 de julio de 2014.
Es decir, cualquier incidencia sobre los asuntos planteados por los peticionarios no surtiría efecto hasta noventa días después del 1 de enero de 2015. No obstante, a menos de veinticuatro horas de haberse presentado el recurso de certificación y mientras el Tribunal está en receso, lo que supone que una mayoría de los jueces y juezas apenas tuvo tiempo para evaluar el recurso, una mayoría da paso a la certificación presentada. Me pregunto —ya al cansancio— ¿por qué la urgencia? ¿Qué razones justifican la premura? La respuesta la ha venido hilvanando una mayoría de este Tribunal en su inusitado proceder al atender recursos de certificación intrajurisdiccional, particularmente en instancias en que permean asuntos de índole político-partidista.
No es de extrañar, entonces, que hoy una mayoría opte por encontrar razones para certificar esta controversia. Esto contrasta, por ejemplo, con el interés que no encontró una mayoría de este Tribunal hace apenas unos años cuando se nos solicitó que nos expresáramos sobre intereses similares a los hoy en controversia en Col. de Abogados v. E.L.A., 181 DPR 135 (2011). En aquella ocasión, sin embargo, era otra la parte demandante y otra la administración de turno.(2)
En el ejercicio de nuestra competencia jurisdiccional constitucional, estamos llamados a proteger y preservar los derechos del ciudadano frente a los excesos de poder del Estado. Ello nos obliga, necesariamente, a evaluar las acciones del Estado para cerciorarnos que éstas no chocan con los parámetros de la Constitución. Lo que implica, evidentemente, que toda legislación promulgada se puede so- *456 meter a la evaluación judicial para considerar si es acorde a los parámetros que establece la Constitución.
En el ejercicio de esta extraordinaria competencia, los tribunales deben ser juiciosos, sensatos y prudentes sobre cuándo y cómo abordar estas controversias pues, de lo contrario, “corren el peligro de convertirse en actores políticos”. Rudolf Mellinghoff, Los tribunales constitucionales entre la autolimitación judicial y la injerencia político constitucional, pág. 3, disponible en: http://www.juridicas.unam.mx/ publica/librev/rev/dconstla/cont/2011/pr/pr31.pdf. Es precisamente ante ese peligro, que los tribunales, preocupados por su propia legitimidad, han recurrido a la doctrina de la autolimitación judicial. Esta doctrina exige, o le impone, a ese juez prudente reflexionar sobre el sabio ejercicio de la competencia constitucional.
No se cuestiona que “el Estado constitucional requiere, como condición indispensable de su realización, una jurisdicción constitucional independiente que controle los otros órganos constitucionales y los obligue a actuar de conformidad con la Constitución”. Mellinghoff, supra, pág. 10. Eso es una verdad de Perogrullo. Ese presupuesto no supone, sin embargo, que este Tribunal esté investido de un papel preponderante frente a los otros dos poderes constitucionales.
La Asamblea Legislativa es un órgano que también interpreta la Constitución y lo tiene que hacer para cerciorarse de que toda pieza que aprueba no conculque los derechos de los ciudadanos, según delineados en la Constitución. Es por ello, entre otras razones, que toda legislación se presume constitucional. Esta realidad tiene que ser respetada y no ninguneada por este Tribunal. Si bien este Foro es el último intérprete de la Constitución, la Legislatura es su intérprete inicial. El respeto que exigimos a nuestras Opiniones es el mismo que les debemos a los otros actores constitucionales. No podemos exigir que otros nos respeten cuando nosotros no les respetamos.
*457 Con el proceder de hoy, de aceptar una certificación intrajurisdiccional en menos de veinticuatro horas de presentada, nos inmiscuimos a destiempo en esta controversia con visos de adelantar un juicio político sobre la misma. La prudencia exigía que en un ejercicio de autolimitación judicial no interviniéramos en la controversia en esta etapa de los procedimientos. Al hacer lo contrario, el bloque mayoritario continúa erosionando la legitimidad de este Foro, transformándolo en un ente inconsecuente para el País. Por entender que no existe fundamento jurídico alguno para expedir esta certificación y atender con urgencia una ley que no surtirá efecto hasta abril de 2015, disiento.

 En palabras del profesor Luis José Torres Asencio: “D]a naturaleza extraordinaria de la certificación intrajurisdiccional encuentra su justificación en el importante propósito de asegurar que los asuntos de derecho considerados por nuestros tribunales se sometan a riguroso análisis por las instituciones fundamentalmente distintas que componen el esquema de tres niveles de nuestro sistema judicial [...]”. Luis José Torres Asencio, Carril expreso al Supremo, 80grados, 18 de mayo de 2012, disponible en: http://www.80grados.net/carril-expreso-al-supremo/#footnote_10_ 11976.

 Dicho sea de paso, a diferencia del presente recurso, aquella controversia se inició y continuó su curso ordinario en el Tribunal de Primera Instancia. Posteriormente, ante una determinación del foro primario y una sentencia del Tribunal de Apelaciones que revocó la determinación del foro de instancia, la parte demandante optó por recurrir ante este Tribunal mediante recurso de certiorari. En aquella ocasión, una mayoría de este Tribunal denegó el recurso presentado mediante una resolución escuetamente fundamentada. Entonces, curiosamente, el bloque mayoritario no encontró interés alguno en que este Tribunal se expresara sobre la controversia.